# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 853 | **DATE** | 8/20/2001 |
| **CASE TITLE** | UNITED STATES vs. WILLIAM A. HANHARDT | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant Joseph Basinski motion to continued the trial date is denied. Enter Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 2 1 2001 | |
| ✓ | Docketing to mail notices. | | date docketed | 198 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| EF | | courtroom deputy's initials | CB-7 FILED FOR DOCKETING 01 AUG 20 PM 3: 5_ date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 00 CR 0853 |
| | ) | |
| vs. | ) | HONORABLE CHARLES R. NORGLE |
| | ) | |
| WILLIAM A. HANHARDT; JOSEPH | ) | |
| N. BASINSKI; PAUL J. SCHIRO, | ) | |
| SAM DESTEFANO, GUY ALTOBELLO | ) | **DOCKETED** |
| and WILLIAM R. BROWN, | ) | |
| | ) | AUG 2 1 2001 |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, Sr., District Judge:

Before the court is the motion of Defendant Joseph Basinski to continue the September 4, 2001 trial date, set by order of May 18, 2001. For the following reasons, the motion is denied.

## I.    BACKGROUND

This case arises out of an alleged organized crime conspiracy to commit jewelry thefts. Currently at issue is Basinski's motion to continue the trial. Defendant William Hanhardt filed a motion to continue the trial, to which Basinski and each of the Co-Defendants joined, and raised individual arguments to continue.[1] On July 26, 2001, the court issued an opinion denying Hanhardt's motion. See United States v. Hanhardt, – F. Supp. 2d –, No. 00 CR 0853, 2001 WL 849372 (N.D. Ill. July 26, 2001). Since then, the court has denied the motions of Co-Defendants Paul Shiro, Sam DeStefano, and Guy Altobello to continue the trial date. In ruling on those motions, the court

---

[1] One of the Co-Defendants, William R. Brown, remains a fugitive. The court refers to the other Defendants individually by name, or collectively simply as "Defendants."

adopted and incorporated by reference its opinion denying Hanhardt's motion to continue. The court writes separately on Basinski's motion to reiterate important issues concerning criminal defendants in pre-trial detention and the public interest in speedy trials.[2] In doing so, there is a fair amount of overlap and repetition from the court's opinion of July 26, 2001, but a full discussion of all issues is salubrious. A discussion of the procedural background of the case is necessary to place the issues in context.

The original indictment was returned on October 19, 2000. (R. 1.) The indictment contained two counts stemming from the alleged jewelry theft conspiracy. Basinski was arraigned, and entered a plea of not guilty. (See R. 12.)

The court conducted a status hearing on October 26, 2000, and ordered a discovery conference to be held within ten days pursuant to Local Criminal Rule 16.1. (See R. 32.) The court also set a schedule for pretrial motions, with Defendants' pretrial motions due within 21 days, the Government's response due 14 days thereafter, and Defendants' replies due 7 days thereafter. (See id.) The court then set a jury trial for January 22, 2001. (Id.)

Beginning in late October 2000, and continuing into December 2000, the Government provided copies of discovery materials to Defendants consisting of approximately 21,000 pages of documents. These documents included: (1) applications for and extensions of Title III wire

---

[2]Much of Hanhardt's motion to continue involved an alleged deprivation of Hanhardt's limited Sixth Amendment right to counsel of choice. That right is personal to Hanhardt. In discussing the issue again here, the court in no way implies that Basinski may assert Hanhardt's Sixth Amendment rights as his own.

intercepts and pen register i.d. devices, the affidavits submitted in support of the Title III orders, and the Title III orders themselves; (2) transcripts of the wire intercepts; and (3) F.B.I. 302 materials.[3]

On November 1, 2000, the assigned magistrate judge denied the Government's motion for pre-trial detention of Basinski. (R. 40.) The Government appealed to the district court on November 3, 2000. (R. 41.) This court held a hearing on the issue of Basinski's detention, and on November 9, 2000, granted the Government's motion to revoke the magistrate judge's order of release as to Basinski. (R. 50.) The detention hearing included evidence of Basinski's late night visit to the home of a potential Government witness, which led to charges of retaliating against the witness and obstruction of justice. See United States v. Basinski, 226 F.3d 829, 832-33 (7th Cir. 2000). Basinski has remained in custody since November 9, 2000.

On November 15, 2000, all Defendants filed an emergency joint motion to extend time in which to file pretrial motions, and to continue the January 22, 2001 trial date. (R. 61.) Defendants asked for pretrial motions to be due September 17, 2001, and for an unspecified trial date thereafter. (Id.) The court held a hearing the following day, November 16, 2000. The court and counsel discussed the extent of the documents turned over by the Government, and the amount of time defense counsel needed to review that material. (See R. 88-3, Tr. of Nov. 16, 2000, pp. 5-25.) The court noted that it should not force the case to trial too early, and that it was clear that the original trial date of January 22, 2001 was too early a date. (See id. at 22-23.) The court rejected the suggested date for pre-trial motions, September 17, 2001, but struck the scheduled trial date, granted

---

[3]302 materials are F.B.I. interview reports. See e.g. United States v. Muhammad, 120 F.3d 688, 692 (7th Cir. 1997); United States v. Marks, 816 F.2d 1207, 1210 (7th Cir. 1987).

Defendants until January 19, 2001 to file their pretrial motions, and kept January 22, 2001 as a status hearing date. (See id. at 22-25.)

At the same hearing on November 16th, the Government indicated that it was going to bring a superseding indictment. The following exchange took place concerning the superseding indictment:

> MR. SCULLY [Assistant United States Attorney]: Just one other matter your Honor.
> There is going to be a minor - - there is going to be a superseding indictment, just to correct two errors in the indictment. One has to deal with a reference back to a wrong paragraph, and the other was some language that kind of dangled on at the end of a paragraph.
>
> THE COURT: Well, it will require rearraignment.
>
> MR. SCULLY: It doesn't substantively change, but it might well - - it might well require arraignment.

(R. 88-3, Tr. of Nov. 16, 2000, pg. 27.) The Government filed the superseding indictment on November 16, 2000. (R. 56.)

On November 17, 2000, Basinski filed a notice of appeal concerning the revocation of his order of release, asking the Seventh Circuit to order his release pending trial. The Seventh Circuit later denied his motion.

On November 29, 2000, the court re-arraigned Defendants on the superseding indictment. (See R. 66 & 67.) Defendants waived their rights to be present for re-arraignment. (See id.)

In December 2000, new attorneys filed appearances for both Basinski and Hanhardt. Basinski retained Jeffrey Cole and Andrew Staes, whom the court allowed to replace Basinski's appointed counsel, John Theis.[4] Mr. Cole, at one point, had been in the case, but then withdrew, and

---

[4]Mr. Cole and Mr. Staes are being assisted in this case by Mr. Stephen Scallan.

the court allowed him to reenter the case. Hanhardt retained Thomas Sullivan, the former United States Attorney and a partner at a large law firm.[5] The court allowed Hanhardt's previously retained counsel, Thomas Decker, to withdraw.

On January 10, 2001, Defendants brought two more motions. The first was a motion to recuse (R. 90), to which the court ordered briefing. The second was a motion was to extend the time in which to file pretrial motions. (See R. 89.) Defendants asserted that they needed additional time to review discovery materials and prepare their pre-trial motions, and asked that pre-trial motions be due no earlier than May 18, 2001. (See id.) The court ruled on this motion from the bench, granting Defendants until March 1, 2001 to file routine pre-trial motions, and until May 18, 2001 to file complex pre-trial motions. (See R. 91.) The court also set briefing schedules for any pre-trial motions filed on these dates. (See id.)

On March 1, 2001, Defendants filed a motion for additional discovery from the Government, seeking further information to use in preparing anticipated motions to suppress evidence obtained from the Title III intercepts. (See R. 116.)

On March 14, 2001, the court denied Defendants' motion to recuse. See United States v. Hanhardt, 134 F. Supp. 2d 972, 975-77 (N.D. Ill. 2001).

On March 20, 2001, the court granted Basinski's motion for a modification of his detention to attend the funeral of a family member on March 21st. Basinski was released to the custody of his

---

[5]Mr. Sullivan is being assisted with this case by at least two associates, Ms. Carolyn Pelling Gurland and Mr. Jeffrey Silver.

counsel, who ensured that Basinski attended the funeral and returned to the MCC[6] pursuant to the court's order.

On April 20, 2001, Hanhardt filed a petition for mandamus in the Seventh Circuit, asking the Seventh Circuit to order this court's recusal. (See Seventh Cir. Docket in 01-1977.) Three days later, on April 23, 2001, Basinski filed a similar petition for mandamus. (See Seventh Cir. Docket in 01-1999.)

On May 7, 2001, the court held a status hearing, where Hanhardt requested an additional extension of time in which to file complex pre-trial motions. (See Tr. of May 7, 2001, pp. 9-12.) Hanhardt asked that he have until June 29, 2001 to file complex pre-trial motions because of the amount of discovery that the Government had produced. (See id.) After Hanhardt's Co-Defendants joined in the motion for additional time, the court stated:

> THE COURT: I'm going to grant the motion in part but deny it in part.
> We will continue the date from May 18th to June 1st, which is two additional weeks. And on a very strong showing the Court might grant yet another extension from June 1st, but it will not be enough to say that "There is so much material that we can't quite analyze it all and deal with it in order to meet these deadlines."

(Id. at pg. 12.) The court then advised the parties that it anticipated the case going to trial in the fall of 2001:

> THE COURT: . . . .
> And if at all possible, on June 1st or close to June 1st the Court will attempt to set a trial date in this case, and I think the objective should be early fall.
> So, counsel, when you are preparing your schedules otherwise, keep that in mind.

---

[6]The MCC is the Metropolitan Correctional Center, a federal correctional institution in Chicago.

(Id.) At that time, Hanhardt's counsel informed the court that he was counsel in a civil arbitration that was scheduled to proceed on September 17, 2001:

> MR. SULLIVAN [Hanhardt's counsel]: Your Honor, I want to reiterate what Mr. Podliska said to you, and that is that on September 17th I am to begin a trial before Judge - - or, Frank McGarr as an arbitrator that's been set for a long time, and that's a firm commitment that I have.
>
> THE COURT: Well, things change from time to time.
>
> MR. SULLIVAN: They do. They do. I will keep you advised if it changes.
>
> THE COURT: Yes. And you can do that on June 6th certainly. Tell me.

(Id. at 14.)

On May 16, 2001, Hanhardt filed another motion to extend the time in which to file complex pre-trial motions to June 29, 2001. (R. 125.) Hanhardt again asserted the amount of discovery materials as a reason for the extension. (See id.) Hanhardt also presented an affidavit from an associate working on the case, Jeffrey Silver, which indicated that Mr. Silver unfortunately had a serious health issue that needed attention. (See id.) At the hearing on May 18, 2001, the court expressed concern for Mr. Silver, and granted Hanhardt's motion setting June 29, 2001 as the due date for complex pre-trial motions. (R. 126.) The same day, the court set the trial date for the case as September 4, 2001. (R. 127.)

On May 21, 2001, Hanhardt filed a supplemental brief in the Seventh Circuit on his petition for mandamus. The Seventh Circuit denied the petition on May 24, 2001. (See Seventh Cir. Order of May 24, 2001 in Appellate Docket Nos. 01-1977, 01-1999.) On June 7, 2001, Hanhardt and Basinski petitioned the Seventh Circuit for rehearing en banc, which was denied on June 15, 2001. (See Seventh Cir. Order of June 7, 2001 in Appellate Docket Nos. 01-1977, 01-1999.)

All of this brings the court to Basinski's motion to continue, which he filed on June 29, 2001. As noted, the trial date is scheduled for September 4, 2001. Basinski moves the court to set the matter for trial sometime in January of 2002, arguing that he needs additional time to prepare for trial because: (1) the fact that he is in pretrial detention limits his counsel's ability to consult with him; (2) the extensive amount of discovery material produced by the Government; and (3) the complexity of issues involved in the case. Basinski also concurs in Hanhardt's motion to continue.[7] Attached to Basinski's motion is his affidavit, which states:

> 1. On June 29, 2001, I met and spoke with my counsel
>
> 2. I was again advised of my right to a speedy trial under the Speedy Trial Act, 18 U.S.C.A. § 3161.
>
> 3. I was also advised that I have a constitutional right to a speedy trial under the 6th Amendment of the United States Constitution.
>
> 4. We discussed the work that needed to be done to effectively prepare my defense and the voluminous amount of discovery material that the government has produced - some of it only very recently.
>
> 5. Based on the discussion I had with my counsel on June 29, 2001 and on discussions I have had with them at other times, it is my understanding that counsel cannot properly be prepared for trial by September 4, 2001.
>
> 6. So that I and my counsel can effectively prepare my defense, I do not object to Mr. Hanhardt's motion to reschedule the trial date until sometime after December 2001, and I join in the motion.

(Basinski's Mot. to Cont. Ex. 2.)

Hanhardt, in turn, argues two reasons for a continuance: (1) his counsel's representation of Ortho Biotech, Inc. in an arbitration said to be scheduled for September 17, 2001; and (2) his counsel's stated need for more time to prepare this case for trial due to what counsel claims are the

---

[7]For continuity, the court uses the present tense in addressing Hanhardt's arguments.

complexity of facts and issues, and the volume of written material turned over by the Government.

The Government objects, arguing: (1) that Hanhardt's counsel's scheduling conflict between the Ortho Biotech arbitration and this case is not reason to continue this trial; and (2) that all defense counsel will have had adequate time to prepare for trial by September 4, 2001. As discussed below, the court agrees with the Government, and denies Basinski's motion.

## II. DISCUSSION

The decision to grant or deny a motion to continue is committed to the broad discretion of the trial court. Morris v. Slappy, 461 U.S. 1, 11 (1983); United States v. Tingle, 183 F.3d 719, 722 (7th Cir.1999); United States v. Depoister, 116 F.3d 292, 294 (7th Cir.1997); United States v. Windsor, 981 F.2d 943, 948 (7th Cir.1992); United States v. Rasmussen, 881 F.2d 395, 400 (7th Cir.1989); United States v. Manos, 848 F.2d 1427, 1434 (7th Cir.1988); United States v. Rodgers, 755 F.2d 533, 539 (7th Cir.1985). As a matter of discretion, the decision is properly left to the integrity and independence of the judiciary. Thus, the court's decision will withstand scrutiny, unless the court chooses "an option that [is] not within the range of permissible options from which [a reviewing court] would expect the trial judge to choose under the given circumstances." Depoister, 116 F.3d at 294 (citations omitted.); see United States v. Koen, 982 F.2d 1101, 1115 (7th Cir. 1992); see also Manos, 848 F.2d at 1434 (noting that a question of continuance "must be decided on a case by case basis in the light of the circumstances presented, particularly the reasons for continuance presented to the trial court at the time the request is denied. . . ."); United States v. Davis, 604 F.2d 474, 480 (7th Cir.1979) ("Reported decisions offer little guidance [in reviewing rulings on continuances]; each decision necessarily turns on the particular facts and circumstances of the case.").

9

"'It is critically important that a trial court be able to maintain control over its calendars and that a trial date once set must be adhered to unless there are compelling reasons for granting a continuance.'" United States v. Bush, 820 F.2d 858, 860 (7th Cir.1987) (quoting Stevens v. Greyhound Lines, Inc., 710 F.2d 1224, 1230 (7th Cir.1983)); see also Morris, 461 U.S. at 11 (trial judge's burden of coordinating a trial date "counsels against continuances except for compelling reasons."); United States v. Reynolds, 189 F.3d 521, 527 (7th Cir. 1999) (citing Bush). This basic tenet cannot be overstated. Respect for the judiciary demands that the court sets its schedule pursuant to the salient circumstances, and that decision not be disturbed absent compelling reasons to do so. Cf. Shaikhs v. Immigration and Naturalization Svc., 181 F.3d 823, 825 (7th Cir. 1999) (in a different context noting that "'[t]he sparsity of case law on the question suggests not that the principle is dubious but that it is too obvious to have incited many challenges.'") (quoting Amati v. City of Woodstock, 176 F.3d 952, 955-56 (7th Cir. 1999)). With these principles in mind, the court addresses Basinski's arguments and reiterates its reasons for rejecting Hanhardt's arguments, as Basinski has adopted those as his own.[8] The court begins with the scheduling conflict argument raised by Hanhardt, and emphasizes important public interest concerns over speedy trials as they relate to Basinski.

## A.    Ortho Biotech Arbitration:

Hanhardt asserts that the court must continue this case because his lead counsel has a scheduling conflict between the case at bar and the civil arbitration in Amgen, Inc. v. Ortho Biotech,

---

[8]Indeed, Basinski makes only a single citation to authority, the case of Unger v. Sarafite, 376 U.S. 575, 589 (1964).  The proposition cited from that case, that a court's insistence upon expeditiousness in the face of a justifiable request for delay can impair the Sixth Amendment right to counsel, is more in support of Hanhardt's scheduling conflict argument, which the court discusses herein, and which was one subject addressed in the court's opinion of July 26, 2001.

10

Inc. Hanhardt avers that the arbitration is scheduled to begin on September 17, 2001, and that the trial date of September 4, 2001 in this case needlessly forces counsel to choose between withdrawing as counsel for Hanhardt or breaching his professional obligations in the Ortho Biotech arbitration. The argument is not persuasive.

Where defense counsel moves for a continuance based on a scheduling conflict, the court must consider the defendant's Sixth Amendment rights. The Sixth Amendment guarantees a criminal defendant the right to assistance of counsel, including a limited right to counsel of choice. U.S. Const. amend. VI; see also Powell v. Alabama, 287 U.S. 45, 53 (1932) (Sixth Amendment provides a defendant a "fair opportunity to secure counsel of his own choice."). While there is a presumption in favor of the defendant's counsel of choice, Wheat v. United States, 486 U.S. 153, 164 (1988), the right to counsel of choice "'is not absolute, but qualified, and must be balanced against the requirements of the fair and proper administration of justice.'" Rasmussen, 881 F.2d at 401 (quoting United States v. Micke, 859 F.2d 473, 480 (7th Cir.1988)). The focus of this Six Amendment inquiry is on the adversarial process, not the defendant's relationship with a particular lawyer. Wheat, 486 U.S. at 159 (citing United States v. Cronic, 466 U.S. 648, 657 n. 21 (1984)); United States v. Hughey, 147 F.3d 423, 431 (5th Cir.1998); Rodgers, 755 F.2d at 540 n. 4. As the Supreme Court has explained:

> [W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

Wheat, 486 U.S. at 159 (1988); see also Hughey, 147 F.3d at 432 (holding that the District Court's denial of motion to continue, even though it required counsel to withdraw due to a scheduling

conflict, protected the adversarial process and the defendant's substantial rights); cf. United States v. Messino, 181 F.3d 826, 830-31 (7th Cir.1999) ("The Sixth Amendment guarantees adequate counsel, not the best possible counsel.").

The Sixth Amendment right to counsel of choice does not encompass a right to counsel who cannot comply with the court's reasonable schedule. See Hughey, 147 F.3d at 429-30 (citing cases and discussing situations where a defendant's limited right to counsel of choice must yield); United States v. Delia, 925 F.2d 574, 575 (2nd Cir. 1991) ("The right to counsel of one's choice does not include a lawyer whose other commitments preclude compliance with a court's reasonable scheduling of its cases."). As Justice Brennan explained in his concurring opinion in Morris:

> The defendant's interest in preserving his relationship with a particular attorney is not afforded absolute protection. If the attorney is likely to be unavailable for an extended period, or if other factors exist that tip the balance in favor of proceeding in spite of a particular attorney's absence, the defendant's motion for a continuance clearly may be denied.

Morris, 461 U.S. at 25 (Brennan, J. concurring in the result (joined by Marshall, J)). Thus, "'where the inability of retained counsel to serve gives promise of unreasonable delay or inconvenience in completing the trial, the court may require the defendant to secure other counsel.'" Kleba v. McGinnis, 796 F.2d 947, 952 (7th Cir.1986) (quoting United States v. Cicale, 691 F.2d 95, 106 (2nd Cir.1982)). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." Morris, 461 U.S. at 11 (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)); see also United States v. Scopo, 861 F.2d 339, 342-44 (2nd Cir. 1988) (finding no abuse of discretion and no Sixth Amendment violation in denying a motion to continue).

12

When counsel seeks a continuance because of a scheduling conflict, the court cannot arbitrarily deny the motion when the effect is to deny the defendant's limited right to counsel of choice. See Morris, 461 U.S. at 11; see also Rasmussen, 881 F.2d at 401 & 402 (citing Morris, 461 U.S. at 11-12 and Ungar, 376 U.S. at 589); Hughey, 147 F.3d at 426-33 (holding that the District Court's denial of a motion to continue based on defense counsel's scheduling conflict was not arbitrary); Neal v. State of Texas, 870 F.2d 312, 316 (5th Cir. 1989) ("After a defendant has been given a fair or reasonable opportunity to obtain counsel of choice, the decision to grant or deny a continuance to permit a further opportunity to do so rests within the broad discretion of the trial court."). Thus, even though the court's scheduling is entitled to deference, the court must articulate its reasons for denying a motion to continue, and must exercise care when a criminal defendant's Sixth Amendment rights may be impacted. See Morris, 461 U.S. at 11; Rasmussen, 881 F.2d at 401 & 402; Hughey, 147 F.3d at 426-33; Neal, 870 F.2d at 316. This rule does not require the court to articulate its reasons for setting a particular trial date, for that decision rests within the court's discretion and should remain inviolate. It is only when a party asks the court to change its calendar that the court must state why it will or will not change a scheduled date. The court's resolution of this issue, like other matters that affect continuances, is within its discretion. United States v. Brown, 79 F.3d 1499, 1505 (7th Cir.1996). The courts of appeal are "loathe to find error" when the district court's reasoned course of action ensures that the adversarial process is secure, and the defendant's substantial right to prepared and available counsel is protected. Hughey, 147 F.3d at 431. The district court's decision will stand unless its actions are not within the range of permissible options. Depoister, 116 F.3d at 294; Koen, 982 F.2d at 1115 (noting that the appellate court will "not second-guess the [denial of a motion to continue] that is in conformity with established legal

principles and, in terms of its application of those principles to the facts of the case, is within the range of options from which one could expect a reasonable trial judge to select.").

What constitutes an arbitrary denial of a motion to continue depends on the facts at hand. Depoister, 116 F.3d at 294; Manos, 848 F.2d at 1434; Davis, 604 F.2d at 480. The district court is in the best position to consider the salient circumstances and make a reasoned decision as to the best course of action. See United States v. Schwensow, 151 F.3d 650, 655-56 (7th Cir. 1998); Davis, 604 F.2d at 480. Some courts, notably in the Fifth Circuit, have announced a list of factors to consider in determining whether to grant a motion to continue when the denial of the motion may impact retained counsel's ability to stay on a case. See Hughey, 147 F.3d at 431-32. The Fifth Circuit's factors include: "(1) when the request for continuance was filed: (2) the nature of the reasons offered to support the continuance, particularly where there is reason to believe that those reasons are either less than candid or offered in bad faith; (3) the length of the requested delay; (4) the number of continuances previously granted; and, the great catch-all, (5) the general balance of convenience to the parties and the court." Id. (citing cases). The Seventh Circuit, by contrast, has not announced such a list of factors to apply in this situation. The Seventh Circuit has outlined factors that are relevant to a motion to continue due to alleged inadequate time to prepare, see e.g. United States v. Avery, 208 F.3d 597, 602 (7th Cir. 2000); Bush, 820 F.2d at 860, but that raises different issues than those raised in a motion to continue that implicates the Sixth Amendment right to counsel of choice. See United States v. Uptain, 531 F.2d 1281, 1286 & 1289-90 (5th Cir.1976)). In terms of a conflict between counsel's schedule and the court's schedule, the Seventh Circuit examines whether the decision to deny the continuance was arbitrary in light of the salient circumstances. United States v. Santos, 201 F.3d 953, 958-59 (7th Cir. 2000); Rasmussen, 881 F.2d at 401 & 402. Thus, the court

14

will analyze Basinski's motion and his proffered reasons for continuing the trial date in light of the salient circumstances. The court will also examine the factors announced by the Fifth Circuit because they provide guidance, and Basinski joins in Hanhardt's motion under those factors.

### 1. Salient Circumstances:

Hanhardt contends that the court should continue the September 4, 2001 trial date to accommodate his counsel's arbitration schedule. Hanhardt avers that the arbitration is scheduled to begin on September 17, 2001, with former United States District Court Judge Frank McGarr presiding.[9] According to Hanhardt, the arbitration proceedings began in 1985, and involve a pharmaceutical product licensing agreement. The matter scheduled for September 17, 2001 is purportedly the last in a series of arbitrations concerning the licensing agreement. Hanhardt's counsel claims that he was retained in May of 1999 to act as co-lead counsel in the arbitration. Hanhardt's counsel also avers that the arbitration outcome is extremely important to the parties, and that he has spent a great deal of time preparing for the arbitration and has developed a degree of expertise on the issues therein.

According to Hanhardt, on July 27, 2000, Mr. McGarr set a discovery schedule for the arbitration, with a fact discovery cutoff of August 1, 2001, and an expert discovery cutoff of August 31, 2001. There have purportedly been over 110 depositions taken, with an additional 35 to 40 depositions scheduled. Written discovery in the arbitration is said to consist of over six million pages of material.

Hanhardt's counsel asserts that the option of continuing the arbitration does not exist. In support of that assertion, he claims that "lawyers and witnesses from all parts of the country are

---

[9]Mr. McGarr retired from the federal bench in 1988.

involved, and it is the avowed intention of all to begin on September 17, 2001. . . ." (Mot. to Cont. pg. 8.) The only factual basis for this broad statement is an affidavit from Mr. McGarr dated May 16, 2001, which states in its entirety:

> I am the arbitrator in the case of Amgen, Inc., Claimant v. Ortho Biotech, Inc., Respondent. The trial is scheduled to being on September 17, 2001. There are four law firms, two from out of town, and a large number of ancillary personnel. It would create a genuine hardship to change this date and I do not intend to do so.

(Mot. to Cont. Ex. 5.) Hanhardt does not provide the information on which Mr. McGarr based this affidavit. There is no other factual support for the statement that all concerned with the arbitration have the avowed intention to proceed on September 17th.

Hanhardt argues that his counsel's prior commitment to the Ortho Biotech arbitration supersedes the court's scheduling of this case for trial on September 4, 2001, and that a denial of the motion to continue will have "devastating" consequences on his Sixth Amendment right to counsel of choice. In sum, Hanhardt claims that denial of his motion to continue violates his Sixth Amendment rights by "needlessly impos[ing] an impossible dilemma on Mr. Sullivan: Mr. Sullivan must either withdraw as Mr. Hanhardt's lawyer, thus forcing Mr. Hanhardt to obtain a new lawyer to defend this case (with inevitable lengthy delays and obvious constitutional implications), or Mr. Sullivan must breach his professional obligation to his clients Johnson & Johnson and Ortho Biotech by abandoning his long-standing professional commitment and withdrawing as its trial counsel." (Mot. to Cont. pg. 10.)

The Government objects, arguing that the Ortho Biotech arbitration should not take precedence over the case at bar. The Government further argues that the record does not support the assertion of Hanhardt's counsel that the arbitration date is immovable, and that counsel should move

for a continuance in the arbitration before seeking a continuance in this case. The Government claims that the public interest will be harmed if a private arbitration is to take precedence over a federal criminal trial, especially where Basinski is being detained pending trial.

Thus, the salient circumstances are: (1) counsel's scheduling conflict, and the impact of the conflict on Hanhardt's limited right to counsel of choice; (2) the Government's objection to a continuance; (3) the indictment in October 2000, the scheduled trial date of September 4, 2001, and the continuance requesting trial no earlier than January 2002; and (4) Basinski's detention since November 9, 2000. As discussed below, the court finds these circumstances are such that it should deny the motion to continue, with due regard for the alleged Sixth Amendment effect on Hanhardt's limited right to counsel of choice.

The alleged scheduling conflict of Hanhardt's counsel is insufficient reason to continue this trial. The burden of persuading the court to change a trial date is on the moving party, who needs to present compelling reasons to do so. See Morris, 461 U.S. at 11; Reynolds, 189 F.3d at 527; Bush, 820 F.2d at 860. It takes more than counsel's claim of a crowded schedule to carry this burden. The court's schedule is a matter of necessary discretion, see Morris, 461 U.S. at 11; Bush, 820 F.2d at 860, and should not be subordinated to the schedules of the lawyers that appear before it. The judicial system depends on lawyers, as officers of the court, to accept cases and clients only to the extent that the lawyer is able to adequately represent them. See generally American Bar Association Standards for Criminal Justice Prosecution Function and Defense Function, Standard 4- 1.3(e) (1993) ("Defense counsel should not carry a workload that, by reason of its excessive size, interferes with the rendering of quality representation, endangers the client's interest in the speedy disposition of charges, or may lead to the breach of professional obligations. . . ."); American Bar

Association Model Rules of Professional Conduct Rule 1.7(b) (addressing a lawyer's duty to his client when his representation may be limited by other considerations, including his representation of another client); see also Northern District of Illinois Local Rule 83.50.1 (Local Rules of Professional Conduct are comparable to the ABA model rules). Part and parcel of these obligations is the duty not to adopt a schedule that hampers the administration of justice. See American Bar Association Standards for Criminal Justice Prosecution Function and Defense Function, Standard 4- 1.3(e) (1993); American Bar Association Model Rules of Professional Conduct Rule 1.7(b); see also McGinnis, 796 F.2d at 952 ("[T]he Sixth Amendment does not give an accused the power to manipulate his choice of counsel to delay the orderly progress of his case."). A defendant's qualified right to counsel does not extend to an unwavering insistence on an attorney that has an already busy trial schedule, so as to impede the efficient administration of justice.

More fundamentally, the scheduling difficulty facing Hanhardt's counsel is not the "impossible dilemma" he claims it is. A dilemma is "a situation that requires a choice between two evenly balanced alternatives." Webster's II New Riverside University Dictionary, 378 (1988). In other words, a true dilemma requires equally unpleasant options. Counsel does not present the court with a dilemma because his scheduling conflict does not entail two evenly balanced alternatives. The conflict is between a multiple defendant federal felony trial and a private commercial arbitration. This predicament does not require the wisdom of Solomon to resolve. An experienced criminal defense attorney should recognize which of the two obligations carries greater weight.

There is a well established priority of criminal proceedings over civil proceedings. Federal Rule of Criminal Procedure 50(a) makes this explicit by stating:

18

The district courts may provide for placing criminal proceedings upon appropriate calendars. Preference shall be given to criminal proceedings as far as practicable.

Fed. R. Crim. P. 50(a); see also Bush, 820 F.2d at 861 (discussing the duty of the district court to keep calendars "as current as humanly possible," and noting the difficulties in doing so) (citing Kleba, 796 F.2d at 952 and quoting Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 608 (7th Cir. 1986). Rule 50(b) instructs the district courts to plan for achieving the prompt disposition of criminal cases in accordance with the Speedy Trial Act, Chapter 208 of Title 18 U.S.C. See Fed. R. Crim. P. 50(b). This priority is echoed by Federal Rule of Criminal Procedure 2, which states that the Rules of Criminal Procedure "shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay. Fed. R. Crim. P. 2. These authorities make clear that the court has a duty to ensure that criminal cases do not linger on its docket.

Moreover, the court cannot ignore the public interest in the efficient administration of justice. In this regard, the advisory committee notes to Rule 50 are instructive. The court quotes Rule 50's advisory committee notes at length:

> This rule is a restatement of the inherent residual power of the court over its own calendars, although as a matter of practice in most districts the assignment of criminal cases for trial is handled by the United States Attorney. Cf. Federal Rules of Civil Procedure, Rules 40 and 78, 28 U.S.C. Appendix. The direction that preference shall be given to criminal proceedings as far as practicable is generally recognized as desirable in the orderly administration of justice.
>
> . . . .
>
> The addition to the rule proposed by subdivision (b) is designed to achieve the more prompt disposition of criminal cases.
>
> Preventing undue delay in the administration of criminal justice has become an object of increasing interest and concern. This is reflected in the

Congress. See e.g. 116 CongRec. S7291-97 (daily ed. May 18, 1970) (remarks of Senator Ervin). Bills have been introduce fixing specific time limits. See S. 3936, H.R. 14822, HR. 15888, 91st Cong., 2d Sess. (1970).

Proposals for dealing with the problem of delay have also been made by the President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts (1967) especially pp. 84 to 90, and by the American Bar Association Project on Standards for Criminal Justice, Standards Relating to Speedy Trial (Approved Draft, 1968). Both recommend specific time limits for each stage in the criminal process as the most effective way of achieving prompt disposition of criminal cases. See also Note, Nevada's 1967 Criminal Procedure Law from Arrest to Trial: One States' Response to a Widely Recognized Need, 1969 Utah L.Rev. 520, 542 n. 114.

Historically, the right to a speedy trial has been thought of as a protection for the defendant. Delay can cause a hardship to a defendant who is in custody awaiting trial. Even if afforded the opportunity for pretrial release, a defendant nonetheless is likely to suffer anxiety during a period of unwanted delay, and he runs the risk that his memory and those of his witnesses may suffer as time goes on.

Delay can also adversely affect the prosecution. Witnesses may lose interest or disappear or their memories may fade thus making them more vulnerable to cross-examination. See Note, The Right to a Speedy Criminal Trial, 57 Colum.L.Rev. 846 (1957).

*There is also a larger public interest in the prompt disposition of criminal cases which may transcend the interest of the particular prosecutor, defense counsel, and defendant. Thus there is need to try to expedite criminal cases even when both prosecution and defense may be willing to agree to a continuance or continuances. It has long been said that it is the certain and prompt imposition of a criminal sanction rather than its severity that has a significant deterring effect upon potential criminal conduct.* See Banfield and Anderson, Continuance in the Cook County Criminal Courts, 25 U.Chi.L.Rev. 259, 259-63 (1968).
. . . .

. . . . Prompt disposition of criminal cases in which the defendant is held in pretrial detention would ensure that the deprivation of liberty prior to conviction would be minimized.

Fed. R. Crim. P. 50 advisory committee notes (emphasis added). Thus, despite the fact that Basinski concurs in seeking a continuance, the court cannot ignore his pre-trial detention, and should not allow him to remain in jail for over a year awaiting trial. Particularly so when delay would come, in part, because of the scheduling conflict of Hanhardt. The public interest in prompt criminal proceedings, the duty of the court to administer justice efficiently, the court's distaste for excessive pre-trial detention, and the Government's objection to continuance all demonstrate that this case should go to trial as scheduled despite Basinski's concurrence in conducting trial in January 2002.

In sharp contrast to the fundamental importance of criminal prosecutions, the arbitration of Hanhardt's counsel is neither a federal nor a state judicial proceeding. It is a private arbitration being conducted by an alternative dispute resolution entity by the name of Endispute, Inc. (See Mot. to Cont., Ex. 4, Endispute Scheduling Order.) Endispute, Inc. is a commercial, for profit, corporation in the business of providing private arbitration and mediation proceedings as an alternative to litigation. Sorkins Directory of Business & Government, Company Profiles, 1740-41 (Murray L. Sorkin and Pamela J. Sorkin, eds., Chicago ed., vol. 3, 1999). Given the particular circumstances of this case, being a multiple defendant federal criminal prosecution, it is disingenuous to suggest that a corporate commercial dispute set before a compensated non-judicial officer under the auspices of a profit making entity should take precedence over a jury trial before the United States District Court. Cf. Duncan v. Louisiana, 391 U.S. 145, 149 (1968) (discussing the Supreme Court's belief that "trial by jury in criminal cases is fundamental to the American scheme of justice"); Klopfer v. North Carolina, 386 U.S. 213, 223-26 (1967) (discussing the Sixth Amendment right to a speedy trial and the Magna Carta, and noting the fundamental importance of prompt criminal proceedings). Especially so in light of the fact that five persons have been indicted by a federal grand jury

following years of investigation by federal agencies. And, indeed, a case in which Basinski has been in pre-trial detention for months following a bond hearing that included evidence of a late night visit to the home of a potential government witness, purportedly to intimidate the witness,[10] and where the affidavit in support of the initial Title III application indicates that numerous cooperating informants have expressed fear for their safety should their identity be revealed.

Hanhardt asserts that the court should take into account "the well established federal policy favoring arbitration of disputes." (Hanhardt's Mot. to Cont. pg. 10.) In the broad view, the court and the public look with approval upon two corporations that have decided not to make a federal case out of their dispute. The court recognizes the value and importance of efforts to settle commercial disputes without resort to litigation. But, contrary to Hanhardt's argument, such alternative private dispute resolution cannot take precedence over a federal felony criminal trial. Hanhardt does not ask the court to continue a federally filed civil lawsuit at the expense of another civil case in the federal or state court. Nor is there any indication that Hanhardt has sought, or is seeking, a continuance in the arbitration. Rather, Hanhardt seeks the continuance to proceed with an arbitration at the expense of a federal felony trial.

Moreover, Hanhardt's counsel submits nothing more than his own ipse dixit assertion that the arbitration date is set in stone. Counsel's affidavit stating that all factual matters stated in the motion to continue are true is insufficient to support the broad statement that "it is the avowed intention of all to begin [the arbitration] on September 17, 2001. . . ." (Mot. to Cont. pg. 8.) Counsel suggests that all respective attorneys and concerned parties have this avowed intention, but he cannot speak for all those involved in the arbitration. Accepting that Hanhardt's counsel intends to go

---

[10]For further background of these circumstances, see <u>Basinski</u>, 226 F.3d at 832-33.

forward with the arbitration on September 17th, that is insufficient reason to believe that the arbitration will actually go on as scheduled, and it is insufficient reason to continue the trial date here.

And, as the Government points out, Hanhardt's motion is noticeably lacking any indication that counsel has even attempted to continue the arbitration. There is no detail as to the information Mr. McGarr was given prior to making his affidavit. A fully informed arbitrator understands that a federal criminal trial takes precedence over private alternative dispute resolution, and it appears that Mr. McGarr may not have been fully and formally informed of all the circumstances. It rings hollow to come to a United States District Court and demand a continuance before seeking a continuance in a private arbitration. To come here first because this court's schedule was set after the arbitration schedule was set is rigidly following the calendar instead of looking at the relative weights of the two proceedings.

The court also notes its impression that the arbitration schedule is somewhat optimistic. The arbitration schedule allows for discovery, which has apparently been ongoing since 1985, to continue until August 31, 2001. It may be sanguine to schedule a final resolution within three weeks of such extensive discovery. Counsel asserts that placing this case on a schedule after the arbitration will result in a delay of approximately four months, but the court is not at all convinced of that fact. Counsel's argument suggests that all attorneys in the arbitration will rigidly comply with the dates set by the arbitrator, and that no one will seek an enlargement of time. Counsel also suggests that because of Mr. McGarr's state of mind at the time of his affidavit, May 16, 2001, he will deny a request in July, August, or even September to continue the arbitration on grounds of which he has

not been fully and formally informed.[11] Parties to private arbitration are there by their own agreement, and have greater flexibility in controlling their proceedings. Thus, the potential exists that the arbitration will not be completed by the first of the year, which the court must consider. If the arbitration takes longer than expected, the court faces the potential of additional scheduling conflicts from Hanhardt's Co-Defendants, the prosecution, or conflicts with the court's scheduling of other criminal cases. With Basinski being detained, this prospect is untenable. Again, the court must not allow excessive pre-trial detention. On the uncertain facts present here, granting an open ended continuance to Hanhardt for his counsel to complete the private arbitration creates a significant risk that Basinski will remain in pre-trial detention for well over a year. That prospect is unacceptable to the court.

The court recognizes that Basinski concurs in Hanhardt's motion, and despite Basinski's detention, he does not object to a continuance that would have him in pre-trial detention for more than a year. Nevertheless, it is not unheard of for defendants to change their minds. See e.g. United States v. Hodges, – F.3d –, No. 00-1168, 2001 WL 856495, *1-4 (7th Cir. July 30, 2001) (affirming the denial of a motion to withdraw a guilty plea). In Hodges, the defendant raised issues concerning his plea of guilty and assistance of counsel, after stating on the record that "anything [counsel] wants I guess is fine with me, Your Honor." Id. at *3. Basinski's affidavit goes farther than this, but the fact remains that the court's schedule should not be subjected to what may be the whims of the litigants.[12]

---

[11]The court takes judicial notice of the Chicago Daily Law Bulletin article in Late May of 2001 that Mr. McGarr has announced his gradual retirement.

[12]In this case, the court is not burdened with a disagreement between Basinski and his counsel as to scheduling. Compare New York v. Hill, 528 U.S. 110, 114-18 (2000) (discussing waiver of

24

In short, the court does not accept Hanhardt's argument that there is parity between a jury trial in the United States District Court and an arbitration before a non-judicial officer arranged by agreement between private corporations that have employed counsel. The court does not accept, furthermore, that an attorney breaches a professional obligation to a civil client when he acts in compliance of an order to appear for trial of a criminal felony in the United States District Court. Nor can the court accept the argument that counsel for Hanhardt finds himself on the horns of a court-created dilemma. There is no true dilemma here. There are numerous alternatives and choices available to Hanhardt's counsel. Hanhardt's attorney faces a difficulty, not a dilemma, and it is specious to suggest that his only choice is one of sharpened horns.

Hanhardt, and by joinder Basinski, asserts that the court is needlessly rushing the case to trial, but that is hardly the case. Defendants were indicted and arraigned in this case in October 2000.[13] Having the case go to trial approximately eleven months later is not rushing the case to trial. The court has already struck one trial date, and has granted each of Defendants' four motions for more time to file pre-trial motions. Contrary to Defendants' suggestion, the court is not rushing this case along. It is proceeding at an orderly, efficient pace. The court also notes that Hanhardt and Basinski have taken full advantage of the Rules of Criminal Procedure by filing numerous motions in this court and petitions for mandamus in the Seventh Circuit. It is well within their rights to have respectfully disputed the rulings of this court, a ruling by Chief Judge Aspen, and that of a three

_____

time limitations under the Interstate Agreement on Detainers due to counsel's scheduling decision).

[13]It is immaterial that a superseding indictment was brought on November 16, 2000 to correct two minor typographical errors. All Defendants, including Basinski and Hanhardt, were made aware of the substance of the charges in October of 2000. Basinski's assertion that the current indictment was lodged in November 2000 ignores this reality.

judge panel of the Seventh Circuit, but they are making full use of the judiciary, creating systemic reasons for the case to progress instead of linger.

Implicit in Defendants' argument is that the court has an obligation to explain why it set September 4, 2001 as the trial date. That is not the law. Again, the burden is on the moving party to persuade the court to change a set date, rather than on the court to explain its reasons for selecting a date. See Morris, 461 U.S. at 11; Reynolds, 189 F.3d at 527; Bush, 820 F.2d at 860. If, in the court's articulated and reasoned discretion, the movant's stated reason for seeking a continuance is insufficient, that ends the matter. Hughey, 147 F.3d at 431; Depoister, 116 F.3d at 294; Koen, 982 F.2d at 1115. Nor should an assumption created totally out of whole cloth, that the court believes in rushing matters to trial, require response, and yet, with an abundance of caution, the court has been constrained to deal with the suggestion herein. The court should not be placed in the position of defending a decision as basic as setting its schedule. The independence and integrity of the judiciary demand no less. Nevertheless, the court notes that it has a busy schedule, including several criminal cases that are either scheduled for trial in the late summer, or which the court anticipates going to trial early next year. Some of these cases are multiple defendant cases, and one potentially involves the death penalty. As discussed above, the court should not be placed in the position of defending scheduling decisions. Suffice it to say that it is far more convenient to the court to have this matter go to trial as scheduled, rather than pushing the case into next year.

In saying this, the court makes it clear that the convenience of the court is controlling, rather than the convenience of the judge. It is improper and incorrect to equate the convenience of the court with the vagaries of a judge. Federal judges do the work of the court pursuant to the authority given

to them by Article III of the Constitution and by Congress. The convenience of the court, including the efficient administration of justice, is of utmost concern.

Most importantly, though, denial of Hanhardt's motion does not impermissibly infringe on his Sixth Amendment rights. As previously discussed, the court must ensure that the adversarial process is secure, and that Hanhardt's right to prepared, available counsel is protected. See Wheat, 486 U.S. at 159; Hughey, 147 F.3d at 431. In this case, the adversarial process and Hanhardt's right to prepared and available counsel are protected. Indeed, Hanhardt has already exercised his right to counsel not once, but twice, by selecting Thomas Decker, and then replacing him with current counsel. Hanhardt's counsel is the former United States Attorney, a partner at a large law firm, and has ample resources, including the assistance of at least two associates. At a recent status hearing, Hanhardt's counsel asserted that he would not be present for trial on September 4, 2001. (See Tr. of July 10, 2001, pg. 10.) That statement presumes the filing and granting of a motion to withdraw. Unless and until such a motion is granted, counsel has an obligation to appear for trial. See In re Morano, – F.3d –, No. 01-1298, 2001 WL 800042 (7th Cir. July 17, 2001) (affirming an order of contempt against an attorney that failed to appear for a criminal trial after the court denied his motion to withdraw). The granting of a motion to withdraw by any counsel is not a forgone conclusion.

In sum, the salient circumstances here are that the trial will occur approximately eleven months after indictment. This time period is appropriate for this case and provides adequate time for Basinski's lawyers to prepare for trial. Earlier in the proceedings, the court noted that it should not force the case to trial, and struck the original trial date of January 22, 2001. (R. 88-3, Tr. of Nov. 16, 2001, pp. 22-23.) The Government objects to a continuance, and the court must consider the public need in efficient resolution of criminal cases. Basinski should not linger in pre-trial

detention, and the court must not allow the schedule of Hanhardt's counsel to force such lingering. Finally, the court has other matters to deal with, which may become disrupted if this case is continued into 2002. The scheduling conflict of Hanhardt's counsel is insufficient to overcome these circumstances.

### 2. Fifth Circuit Factors:

Hanhardt cited authority from the Fifth Circuit listing factors to consider in deciding a motion to continue. The court again addresses these factors because Basinski concurs in Hanhardt's motion. The Fifth Circuit's factors include: (1) when the request for continuance was filed; (2) the nature of the reasons offered to support the continuance, and if there is reason to believe that those reasons are either not candid or offered in bad faith; (3) the length of the requested delay; (4) the number of continuances previously granted; and (5) the general balance of convenience to the parties and the court. Hughey, 147 F.3d at 431-32 (citing cases).

Here, the first factor does not weigh in favor of a continuance. Granted, Defendants' individual and collective requests for a continuance are not on the eve of trial. Nevertheless, the trial date is eleven months after indictment, by which time all defense counsel will have had ample time to prepare for trial. (See infra pp. 30-35.)

The second factor, the stated reasons for seeking a continuance, also demonstrate that a continuance is not warranted. As discussed extensively above, Hanhardt's counsel's scheduling conflict is not sufficient to change the trial date. (See supra pp. 10-28.) The court is not of the opinion that Hanhardt's counsel has not been candid, or is acting in bad faith. Nevertheless, counsel does not offer much in the way of supporting his assertion that the arbitration date is unmoveable, and it appears that he has not yet even attempted to change the arbitration date. Even if counsel had

offered more to support his contentions, it remains that this multiple defendant federal criminal trial takes precedence over a non-judicial private arbitration. (See id.) And, as discussed in greater detail below, the court is not persuaded that counsel for either Hanhardt or Basinski need additional time to prepare the case for trial. (See infra pp. 30-35.)

The third factor, the length of the requested delay, also weighs in favor of denying the motion. The requested delay is approximately four months, but the court is concerned that the delay will exceed that. And, assuming that it is four months, granting the continuance impedes the efficient administration of the court. The strong public interest in resolving criminal cases weighs against granting a continuance where trial would be postponed until approximately fifteen months after indictment, especially where the Government objects to the continuance, and Basinski is being detained. See Fed. R.'s Crim. P. 2, 50; Fed. R. Crim. P. 50 advisory committee note; cf. Klopfer, 386 U.S. at 223-26; Bush, 820 F.2d at 861. But, even if the Government were to agree to a continuance, the court must look to the public interest, which may transcend the position of the parties. See Fed. R. Crim. P. 50 advisory committee note.

The fourth factor concerns the number of continuances previously granted, and also weighs in favor of denying the motion. The court has already stricken the original trial date of January 22, 2001, and has also granted four motions to extend the time in which Defendants had to file pre-trial motions. Defendants will not be heard to argue that this is the first instance in which they have sought additional time.

Finally, balancing the conveniences of the parties and the court demonstrates that a continuance is inappropriate. The court's convenience is served by having this case go to trial as

scheduled.  See Bush, 820 F.2d at 861 (the court is to keep its calendar "as current as humanly possible."); (see also supra pp. 26-27) (discussing the convenience of the court).

## B.    Time to Prepare for Trial:

Basinski argues that his lawyers need additional time to prepare for trial.  The Seventh Circuit has announced as many as nine factors to examine in deciding a motion to continue based on alleged inadequate time to prepare for trial, but the most recent case to look at the issue lists only seven factors.  Compare Avery, 208 F.3d at 602 (reciting seven factors) with Bush, 820 F.2d at 860 (reciting nine factors, five of which are identical to those in Avery).  Basinski cites no authority in support of this argument.  Instead, he simply lists the work that his counsel has done on the case, and asserts that his detention impedes his counsel's ability to consult with him and prepare his defense.  The Government analyzes the case under the factors announced in Avery.  While recognizing that this inquiry depends on the individual facts of each case, and does not lend itself to a ritualistic determination, see Depoister, 116 F.3d at 294 (reciting factors to consider, and noting that they will deserve varying weight depending on the facts at hand), the court will apply the factors announced in Avery.  That case is the latest word from the Seventh Circuit on the issue, and fits well with the facts of this case.  The court will incorporate Basinski's arguments into the Avery factors.

The Avery decision lists the following relevant factors to consider in deciding a motion to continue because of alleged inadequate time to prepare: (1) the quantum of time available for preparation; (2) the likelihood of prejudice from denial; (3) the accused's role in shortening the effective preparation time; (4) the degree of complexity of the case; (5) the availability of discovery

from the prosecution; (6) the likelihood that the continuance would satisfy the movant's needs; and (7) the inconvenience to the court. Avery, 208 F.3d at 602.[14]

The first factor is the amount of time available for preparation. See Avery, 208 F.3d at 602. The scheduled trial date is eleven months after indictment and nine months after current counsel appeared. By September 4, 2001, there will have been ample time for Basinski's lawyers to prepare this case for trial. Basinski asserts that the extensive discovery disclosed from the Government requires more time to analyze, but that argument is without merit. The Government turned over the bulk of the materials in November and December of 2000, which is nine to ten months prior to the trial date. Notwithstanding that the discovery consists of over 25,000 pages of material, there is sufficient time to review the material prior to trial. Indeed, on four occasions, defense counsel have raised the extensiveness of discovery as a reason for continuing the date for pre-trial motions to be due. The court granted each of the Defendants' four motions. At the hearing on May 7, 2001, over fourteen weeks ago, the court cautioned that the asserted need for additional time to review the Government's discovery materials would not be cause for further extensions of time. (See Tr. of May 7, 2001, pg. 12.)

Most of the discovery goes to Title III intercept authorizations, orders, and transcripts. Basinski's lawyers have reviewed all of these materials in preparing a motion to suppress evidence

---

[14]By contrast, Bush recites the following factors: (1) the quantum of time available for preparation; (2) the likelihood of prejudice from denial; (3) the accused's role in shortening the effective preparation time; (4) the degree of complexity of the case; (5) the availability of discovery from the prosecution; (6) the adequacy of the defense actually provided at trial; (7) the skill and experience of the attorney; (8) any pre-appointment or pre-retention experience of the attorney with the accused or the alleged crime; and (9) any representation of the defendant by other attorneys that accrues to the defendant's benefit. Bush, 820 F.2d at 860.

obtained from the intercepts. That motion was filed on June 29, 2001, and remains under advisement. It is readily apparent that counsel is already familiar with the Title III materials, and that trial preparation of that material will not be overly burdensome.

The second factor is the likelihood of prejudice from denial of a motion to continue. See Avery, 208 F.3d at 602. Basinski's argument of prejudice is limited to cursory assertions that his detention has limited his lawyer's ability to consult with him, and that the case needs more time to prepare for trial. As discussed above, the court is unpersuaded that counsel needs four more months to prepare. The court is similarly unpersuaded by Basinski's assertion that his detention is interfering with his lawyer's ability to consult with him. Basinski has been in detention for months, and there is no reason why this detention should interfere with his counsel's ability to consult with him. It is routine for persons in pre-trial detention to meet with their counsel to help prepare the defense, and Basinski has done so in this case. On numerous occasions Basinski's counsel has assured the court that he has been in contact with Basinski on various issues related to his defense.[15] In light of the circumstances of this case, including Basinski's pre-detention conduct,[16] the court is skeptical that Basinski's detention has had any adverse effect on his counsel's ability to consult with

_____

[15]And at least one matter not directly related to the defense. Recall that the court granted Basinski's March 20th motion for modification of his detention order so he could attend a family funeral. Part of that motion included assurances from Basinski's counsel that counsel would attend the funeral with Basinski, and ensure that Basinski returned to the MCC on time. The court granted the motion, in part, relying upon those assurances from counsel. Basinski's counsel later informed the court that both he and Basinski had complied with the modification to the detention order.

[16]Pretrial publicity of this case includes: Steve Warmbir, Alleged Jewel Thief Sent Back to Rehab, Chicago Sun Times, November 2, 2000; Matt O'Connor, Treatment Ordered for Theft-Ring Suspect, Chicago Tribune, November 2, 2000; John Kass, Myron & Phil's Talk Turns to a Briefcase Full of Clues, Chicago Tribune, November 1, 2000; Steve Warmbir, Flouting the Law: Arrest Hasn't Curbed Jewel Suspect's Antics, Chicago Sun Times, October 26, 2000. The court and counsel have expressed concern about jury selection and pretrial publicity.

him to prepare his defense. Mr. Cole has not brought to the attention of the court any specific problem he has encountered in visiting with his client at the MCC, which is located a few blocks from the courthouse.

The third factor examines the accused's role in shortening the effective preparation time. See Avery, 208 F.3d at 602. Basinski points to the hundreds of hours his counsel has spent working on this case, including: (1) review of the indictment; (2) review of application for Title III authorizations and extensions; (3) review of wire intercept transcripts; (4) review of F.B.I. 302 reports; (5) preparation of various pre-trial motions; (6) preparation of Basinski's motion to suppress evidence obtained from a search of his briefcase; (7) preparation of a motion to suppress evidence obtained pursuant to Title III intercepts; (8) preparation of the motion to recuse; (9) preparation of the petition for writ of mandamus to order recusal; (10) preparation in support of various motions concerning bond for Basinski; (11) conferences with Co-Defendants' counsel concerning defense matters; and (12) conferences with prosecutors concerning discovery and other matters. Although the Government states that this factor is inapposite, the court notes that a portion of the work of Basinski's lawyers has been on ancillary matters, such as the motion to recuse and the filings in the Seventh Circuit. The court is not persuaded that these efforts have impeded his lawyers' preparation for trial.

The fourth factor is the degree of complexity of the case. See Avery, 208 F.3d at 602. Basinski asserts that this case presents complex legal and factual issues, but he fails to specify what issues are of such complexity that he needs an additional four months to prepare for trial. The Government argues, and the court agrees, that this case is not overly complex. The basic allegations are thefts of jewelry. The Government argues that its evidence will entail testimony from victims

to establish that the crimes occurred, and that the victims were targeted by Defendants. The Government also states that it intends to introduce telephone recordings and F.B.I. surveillance video tapes, telephone records, and testimony from persons that allegedly received stolen jewelry. The recorded conversations, as far as the court is aware, are in English and do not require the use of an interpreter. Compare United States v. Briscoe, 896 F.2d 1476, 1484 (7th Cir. 1990) (drug conspiracy case where the evidence included recordings of conversations spoken in Yoruba, a language spoken in Nigeria). Nor is there any indication that the recorded conversations involve any type of coded language that would need interpretation. Compare United States v. McAnderson, 914 F.2d 934, 938-39 (7th Cir. 1990) (terrorist conspiracy case that involved deciphering coded statements in recorded conversations). That these crimes involve multiple Defendants, and allegedly occurred as part of an organized crime conspiracy does raise the complexity some, but not to the point that court should extend the trial date out another four months. Basinski's counsel is a long time practitioner, and has a great deal of experience in federal criminal matters. The factual and legal issues of this case should not be overly complex to him.

The fifth factor is the availability of discovery from the prosecution. See Avery, 208 F.3d at 602. Basinski argues that despite the fact that the Government has produced over 26,000 pages of material, most of it (21,000 pages) in November and December of 2000, his lawyers need additional time to prepare the case for trial. All Basinski presents is his counsel's opinion that he needs additional time to prepare. The court is not persuaded. It is plain that Basinski's counsel has examined most, if not all, of the discovery material in preparing his numerous pretrial motions, such as Basinski's motion to suppress evidence obtained from the search of his briefcase and Basinski's motion to suppress evidence obtained from the Title III intercepts. And, the Government has not

been dilatory in producing discovery. The Government has even stated its intention to turn over 18 U.S.C. § 3500 material by August 1, 2001, over a month before trial. See 18 U.S.C. § 3500 (production of statements and reports of witnesses under § 3500 not required until after the witness has testified on direct examination). These facts weigh against granting a continuance.

The sixth factor is the likelihood that the continuance would satisfy the movant's needs. See Avery, 208 F.3d at 602. Part of this analysis is that the movant put forth a compelling need to change the trial date. Morris, 461 U.S. at 11; Reynolds, 189 F.3d at 527; Bush, 820 F.2d at 860. Basinski fails to do so. With trial taking place nearly eleven months after indictment, there is no need to continue the trial date to allow additional time to prepare.

The final factor is the inconvenience to the court if the continuance is granted. Avery, 208 F.3d at 602. As discussed earlier, the focus is on the convenience of the court, not the judge. (See supra pp. 26-27.) This case has been using the resources of both this court and the Seventh Circuit. The efficient administration of justice is better served by having the case go to trial as scheduled, rather than incurring additional delays. The court has other criminal cases on its docket, and re-scheduling this case to the early part of next year may adversely affect the rights of those defendants and impede the efficient, prompt resolution of their cases. The investigation in this case began years ago. There are allegedly numerous victims and dozens of witnesses whose recollections may fade as time goes by. With the Government objecting to the continuance, the case being approximately eleven months old at the scheduled start of trial, and Basinski in pre-trial detention, the court's convenience and the public interest are served by having the trial proceed on schedule.

### III.  CONCLUSION

For the foregoing reasons, Basinski's motion to continue the trial date is denied.

IT IS SO ORDERED.

ENTER:

DATED: _8-20-01_

CHARLES RONALD NORGLE, SR.